UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:12-cv-89-RJC

| | |
|---|---|
| SIDNEY NOEL HOFFMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **ORDER** |
| vs. ) | |
| ) | |
| LINCOLN COUNTY SHERIFF'S ) | |
| DEPARTMENT et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendants David Carpenter, Alan Houser, Lincoln County Sheriff's Department, and Veda Reid, (Doc. No. 52); a Motion to Dismiss by Defendant Institutional Medical Services ("IMS"), (Doc. No. 54); and a Motion to Dismiss by Defendant Judy Humphries, (Doc. No. 65).[1]

**I.     BACKGROUND**

Pro se Plaintiff Sidney Noel Hoffman is a prisoner currently incarcerated at Caledonia Correctional Institution in Tillery, North Carolina. Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Plaintiff filed his original Complaint in this matter on July 2, 2012, and then an Amended Complaint on October 26, 2012, alleging that he was the victim of various constitutional deprivations while he was a pretrial detainee at the Lincoln County Sheriff's Office Detention Center ("the jail") from April 12, 2011, to August 3, 2012. Plaintiff has named the following as Defendants: (1) the Lincoln County Sheriff's Office; (2) Lincoln County Sheriff David Carpenter; (3) Lincoln County Detention Center Jail Administrator Alan Houser; (4)

---

[1] Also pending on the docket are motions to dismiss by Defendant Humphries, (Doc. No. 40), and Defendant IMS, (Doc. No. 43). Both of these motions were filed before Plaintiff filed his Amended Complaint and they are, therefore, both moot.

1

Lincoln County Detention Center Assistant Jail Administrator Veda Reid; (5) Lincoln County Detention Center Head Nurse Judy Humphries; and (6) Defendant Humphries' employer Institutional Medical Services, LLC.  Plaintiff purports in his Amended Complaint to bring constitutional and other federal claims against the various Defendants based on (1) the denial of assignment to a bottom bunk and the related claim for deliberate indifference to Plaintiff's prior knee injury; (2) the denial of daily snack bags; (3) the denial of law library access; (4) the viewing of Plaintiff's medical records by non-medical staff; and (5) Sheriff Carpenter's failure to respond to Plaintiff's grievance appeals.[2]

## II. STANDARD OF REVIEW

### A. Motion to Dismiss For Failure to State a Claim

On a motion to dismiss for failure to state a claim, the Court must accept the factual allegations of the claim as true and construe them in the light most favorable to the non-moving party.  Coleman v. Maryland Ct. of Appeals, 626 F.3d 187, 189 (4th Cir. 2010).  To survive the motion, the "complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  To be "plausible on its face," a plaintiff must demonstrate more than "a sheer possibility that a defendant has acted unlawfully."  Id.  A plaintiff therefore must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling [it] to relief, i.e., the 'plausibility of entitlement to relief.'"  Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 556 U.S. 662 at 678).

### B. Motion for Summary Judgment

---

[2] Plaintiff seeks injunctive and declaratory relief, as well as compensatory and punitive damages against Defendants.  To the extent that Plaintiff seeks injunctive and declaratory relief, those forms of relief are moot because he has been transferred away from the jail where the alleged constitutional violations occurred.  See Williams v. Griffin, 953 F.2d 820, 823 (4th Cir. 1991).

2

Rule 56(a) of the Federal Rules of Civil Procedure provides:

> A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

FED. R. CIV. P. 56(a). The rule goes on to provide procedures for responding to a motion for summary judgment:

> c) Procedures.
>
> (1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> (2) Objection That a Fact Is Not Supported by Admissible Evidence. A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
>
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED. R. CIV. P. 56(c).

On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues of fact for trial. Once the moving party has met that

3

burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Rather, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting FED. R. CIV. P. 56).

## III. DISCUSSION

### A. Plaintiff's Eighth Amendment Claim

The Court begins with the moving Defendants' motions to dismiss Plaintiff's Eighth Amendment claim under FED. R. CIV. P. 12(b)(6), and for summary judgment under FED. R. CIV. P. 56.[3] The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986).[4] To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Id. "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567,

---

[3] The moving Defendants have also moved for dismissal based on insufficient service of process, but the Court disposes of this action on the merits of Plaintiff's claims.

[4] Due to his pre-trial detainee status, Plaintiff's constitutional claims are analyzed under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. However, as a practical matter, courts do not distinguish between the Eighth and Fourteenth Amendments in the context of a pre-trial detainee's Section 1983 claim. See Hill v. Nicodemus, 979 F.2d 987, 990-92 (4th Cir. 1992).

4

575-76 (4th Cir. 2001) (citations omitted). "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990).

In Farmer v. Brennan, the Supreme Court held that the Eighth Amendment to the Constitution "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1992)). This is a low standard, as the Supreme Court emphasized that "[p]rison conditions may be restrictive and even harsh." Id. at 833 (internal quotations omitted). To sustain an Eighth Amendment claim, a prisoner must show (1) that the deprivation was objectively sufficiently serious—that is, the deprivation must be a "denial of the minimal civilized measure of life's necessities" and (2) that the defendant was deliberately indifferent to the prisoner's health or safety. Id. at 834 (internal quotations omitted). Thus, "[d]eliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001).

      1. Plaintiff's Knee Injury and Defendants' Refusal to Give Plaintiff the Bottom Bunk Based on Plaintiff's Knee Injury

Plaintiff first claims that his Eighth Amendment rights were violated because prison staff, particularly the jail's head nurse Defendant Humphries, failed to properly treat Plaintiff's prior knee injury and based on staff's refusal to assign him to a bottom bunk based on the prior knee

5

injury. Plaintiff fails to establish an Eighth Amendment claim against Defendants for deliberate indifference to a serious medical need based on Plaintiff's prior knee injury or based on refusal to assign Plaintiff to a bottom bunk. First, there is no evidence of record showing that Plaintiff's prior knee injury gave rise to a "serious medical need," or that any of the Defendants were deliberately indifferent to that need.[5] With regard to his knee injury, Plaintiff alleges in a Declaration that he had a "prior knee injury" around six months before his arrival at the jail. (Doc. No. 26: Hoffman Decl.). Plaintiff does not allege any facts, however, nor has he produced any evidence on summary judgment, tending to support his claim that he had any serious medical need with regard to his "prior knee injury." Indeed, the allegations in Plaintiff's Amended Complaint, Addendum, and Declaration all indicate that he did <u>not</u> have a serious medical need with regard to his prior knee injury. For example, in his Declaration Plaintiff details medication a physician had prescribed for depression, but Plaintiff does not allege that he had previously been prescribed anything for his prior knee injury. See (Doc. No. 26).

Furthermore, Plaintiff has not alleged facts or presented any evidence showing that any of the Defendants were deliberately indifferent to any of Plaintiff's serious medical needs. Plaintiff alleges that Defendant Humphries attempted to treat the minor discomfort in Plaintiff's knee by

---

[5] Unlike the other Defendants, Defendant Humphries filed a motion to dismiss. Thus, the Court is required to examine only the allegations in the Amended Complaint as to her motion. Even assuming that Plaintiff's allegations against Defendant Humphries are true, Plaintiff does not state a claim against her based on her treatment of his prior knee injury or her refusal to give him daily snack bags. In any event, the evidence presented as to the other Defendants on summary judgment makes clear that Plaintiff could not withstand summary judgment as to Defendant Humphries, even if he could clear the Rule 12(b)(6) hurdle. The Court further notes that, as to Defendant IMS, although Defendant IMS is named in the caption of the Amended Complaint, Plaintiff alleges no facts whatsoever as to Defendant IMS. Rather, Plaintiff appears to seek to impose liability against Defendant IMS solely based on the fact that Defendant IMS was Defendant Humphries' employer. As Plaintiff has failed to state a claim against Defendant Humphries, it follows that Plaintiff has not alleged a claim against IMS.

6

prescribing him Ibuprofen for sixty days. Plaintiff does not contend that the knee pain worsened to the point of being "serious," that the medication was ineffective, or that he petitioned Humphries again to see the doctor regarding his alleged injury. At best, Petitioner merely disagrees with the course of treatment chosen by Defendant Humphries, which is not enough to state an Eighth Amendment claim based on deliberate indifference to serious medical needs. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

As to Defendants' refusal to assign a bottom bunk to Plaintiff, Defendant Houser states in his Declaration that bunk assignments are based on availability unless jailers receive notification from jail medical staff that a bottom bunk is medically required. (Doc. No. 53-1 at ¶ 3: Houser Decl.). Plaintiff first requested a bottom bunk on May 3, 2011, after his cellmate was released on bond. (Id.). Prison staff denied the request because they had already assigned the bunk to another inmate. On May 9, 2011, Plaintiff turned in a medical request stating that he needed pain reliever for his prior knee injury, which caused him discomfort as he got up and down from his top bunk. (Id.). Defendant Humphries examined Plaintiff the next day, and she advised Defendant Houser that there were no noted problems with Plaintiff's knee. (Doc. No. 53-1 at ¶ 3; Doc. No. 53-2 at ¶ 4: Humphries Decl.). Therefore, Plaintiff remained assigned to the top bunk. On May 23, Plaintiff submitted a written request for a bottom bunk due to knee pain, and staff denied the request. (Doc. No. 53-1 at ¶ 3).

Defendants state that Plaintiff was, however, thereafter assigned a bottom bunk based on availability. In fact, Plaintiff was assigned to a bottom bunk from September 2011 to May 2012. (Id. at ¶ 4). As noted, Plaintiff was detained at the jail from April 12, 2011, to August 3, 2012. Therefore, of the fifteen months that Plaintiff was in the jail, he was assigned a bottom bunk for more than seven of those months. In any event, the evidence shows that medical personnel at the

7

jail never determined that Plaintiff required a bottom bunk for medical purposes. (Doc. No. 53-1 at ¶ 4; Doc. No. 53-2 at ¶ 4; Doc. No. 53-3 at ¶ 2: Reid Decl.). Furthermore, Defendants Houser and Reid have both asserted that they never saw Plaintiff limp or display any objective sign of a bad knee. See (Doc. No. 53-1 at ¶ 4; Doc. No. 53-3 at ¶ 2). In sum, Plaintiff has not shown a constitutional violation by any of the Defendants based on treatment related to his prior knee injury or by the denial of a bottom bunk assignment.

2. Denial of Daily Snack Bags of Extra Food

Plaintiff also claims that his Eighth Amendment rights were violated (based on either conditions of confinement or deliberate indifference to serious medical needs, or both) as a result of Defendants'—particularly Humphries' and Houser's—refusal to given him a daily snack bag.[6] Plaintiff submitted a written grievance dated April 29, 2011, requesting to receive a daily snack bag due to supposed weight loss. (Doc. No. 53-1 at ¶ 5). After reviewing Plaintiff's grievance, Houser spoke to Defendant Humphries, who weighed Plaintiff on May 2. (Id.). Plaintiff weighed 212 pounds on that date. (Id.). Because this weight was within one pound of Plaintiff's last recorded weight about ten days before, and because he did not appear undernourished, Humphries told Plaintiff and Lieutenant Houser that Plaintiff did not require a daily snack bag. (Doc. No. 53-1 at ¶ 5; Doc. No. 53-2 at ¶ 2).

More than one year passed before Plaintiff filed a grievance on June 5, 2012, about not receiving a medically ordered snack bag. (Doc. No. 53-1 at ¶ 5). Houser asserts that the fact that Plaintiff filed a grievance "surprised" him, because Humphries had not provided jail staff with a Form C-100, titled "Restricted Medical Diet Order," which is required for medically necessary snack bags. (Id.). Houser therefore spoke directly to Humphries, who told him there was no

---

[6] Inmate snack bags are small bags of food items such a fruit, a sandwich, and milk or orange juice that are provided to an inmate when medically ordered. See (Doc. No. 53-1 at ¶ 5).

8

such order because Plaintiff did not need a daily snack bag.  (Id.).  Humphries nevertheless weighed Plaintiff that same day in Houser's presence to check for any significant weight loss.  (Id.).  Plaintiff weighed 224.5 pounds, and Humphries stated that Plaintiff's previous weight one year before on June 29, 2011, was 230 pounds, only a 6.5 pound difference.  (Id.; see also Doc. No. 53-2 at ¶ 3).  Defendants note that while it is possible that Plaintiff received free snack bags along with other inmates during the summer of 2011 after inmate complaints about meal portions being served by the jail's contracted food services provider, these snack bags were not medically ordered.  Defendants note that when the jail hired a new food services provider the jail stopped supplying snack bags.  (Doc. No. 53-1 at ¶ 5).  Defendants state that Plaintiff, therefore, was not entitled to the continued provision of snack bags once the gratuitous give-away ended.  (Id.).

Plaintiff has failed to show how the need of a snack bag constitutes a serious medical need, or that the jail's refusal to provide Plaintiff with a daily snack bag was a "denial of the minimal civilized measure of life's necessities."  Farmer v. Brennan, 511 U.S. at 834.  Plaintiff is not alleging that he was deprived of food or nutrition altogether.  Rather, Plaintiff is merely alleging that he was denied a snack bag that was necessary to bring him up to what he considered to be a proper weight.  The record contains no evidence, however, that a medical professional had ever made any determination as to what Plaintiff's proper weight should be, or that Plaintiff was not at a proper weight.  Plaintiff has also produced no evidence of the existence of any kind of health condition such as diabetes where he may have had an insulin drop due to failure to eat. "Since routine discomfort is part of prison life  . . . , in order to demonstrate the objective component of conditions-of-confinement or medical care claims prisoners must demonstrate "extreme" deprivations or neglect of serious medical needs."  Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996) (quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)) (internal quotation

marks omitted). Plaintiff has not shown that the denial of a daily snack bag was either an extreme deprivation or a neglect of a serious medical need. In sum, Plaintiff fails to state a constitutional claim against any of the named Defendants based on Defendants' failure to provide Plaintiff with a daily snack bag.

      B.     <u>Viewing of Plaintiff's Medical Records by Non-Medical Staff</u>

In addition to his Eighth Amendment claims, Plaintiff also contends that Defendants Humphries and Houser both violated the "Privacy Act" and Plaintiff's constitutional "right to privacy" because Defendant Humphries allowed Defendant Houser to view Plaintiff's medical file.[7] Plaintiff, however, has provided no indication to which "Privacy Act" he is referring. To the extent that Plaintiff is referring to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. §§ 1320d to 1320d-9, there is no private right of action under HIPAA. See <u>Auld v. Davidson</u>, Civil No. 08-3110-TC, 2009 WL 1559777 (D. Or. June 2, 2009) (prisoner failed to state a claim under HIPAA against prison officials who allegedly discussed his mental health issues and possible treatment in front of other prisoners because HIPAA does not provide for a private right of action); <u>Iannucci v. Mission Hosp.</u>, Civil No. 1:08cv471, 2008 WL 5220641, at *3 (W.D.N.C. Dec. 11, 2008) ("There is no private cause of action under HIPAA.").

Next, as to Plaintiff's claim that Defendants violated his constitutional "right to privacy," neither the U.S. Supreme Court nor the Fourth Circuit has ever recognized a constitutional right in the privacy of prisoners' medical records. <u>Moore v. Mabus</u>, 976 F.2d 268, 271 (5th Cir. 1992)

---

[7] Houser states that he never viewed Plaintiff's actual medical records. (Doc. No. 53-1 at ¶ 7). Houser states that he viewed Plaintiff's medical file in Central Control to confirm there was no medical order for a bottom bunk. (<u>Id.</u>). Houser explains that the jail's Central Control maintains a file documenting inmates' special needs, but this is separate from inmates' actual medical records maintained by medical staff. In any event, Plaintiff has not stated a claim against Defendant Houser for a violation of any of Plaintiff's constitutional rights or any rights under HIPAA.

10

Case 5:12-cv-00089-RJC   Document 74   Filed 08/19/13   Page 10 of 14

(affirming dismissal of a claim of violation of the right to privacy in the publication of a prisoner's medical condition); Blackston v. Vogrin, No. 2:1cv14, 2010 WL 1253895, at *2 (N.D. W. Va. 2010) (finding that the inmate could not establish that he "has a federal constitutional right to privacy in his personal medical information"), aff'd, 404 F. App'x 718 (4th Cir. 2010); Sherman v. Jones, 258 F. Supp. 2d 440, 444 (E.D. Va. 2003) (where inmate alleged that a prison deputy violated the inmate's constitutional right to privacy by revealing the inmate's HIV status in front of other inmates, stating that such a "privacy right has not been recognized by either the Supreme Court or the Fourth Circuit"). "[I]mprisonment carries with it the circumscription or loss of many significant rights." Palmer, 468 U.S. at 524. Loss of privacy is an "inherent incident[ ] of confinement." Bell v. Wolfish, 441 U.S. 520, 537 (1979). Simply put, Plaintiff can plead no set of facts that would entitle him to relief based on Plaintiff's contention that Defendant Humphries allowed Houser to view Plaintiff's medical file.

    C.    Denial of Law Library Access

Plaintiff also claims that Defendant Houser violated his Fifth and Fourteenth Amendment rights by denying Plaintiff access to the jail law library and by refusing to provide Plaintiff with copies of grievances he had filed. With respect to the law library, the issue appears to have been a misunderstanding as to whether Plaintiff was represented by counsel, as only those inmates who are not represented by counsel are allowed access to the jail's law library. Although Plaintiff was represented by counsel in his underlying criminal matter, he is not represented by counsel in this action. Defendant Houser has admitted in his Declaration that he did deny Plaintiff access to the law library to conduct research for this lawsuit because of the misunderstanding regarding whether Plaintiff was represented by counsel. (Doc. No. 53-1 at 6).

11

The denial of access to the jail's law library did not rise to the level of a constitutional violation, as Plaintiff has failed to demonstrate "actual injury" to his access to the courts. That is, the relevant inquiry is not whether Plaintiff's access to the law library was impeded, but whether his access to the courts was impeded. Lewis v. Casey, 518 U.S. 343, 348 (1996) (citing Bounds v. Smith, 430 U.S. 817 (1976)). It is quite clear that such access has not been impeded. That is, Plaintiff's Section 1983 action is currently before the Court, and Plaintiff was able to file a Complaint and an Amended Complaint, both of which contain well-articulated pleadings and purported claims for relief. In sum, Plaintiff has failed to show that he suffered any injury as a result of being denied access to the jail's law library. For the same reasons, Plaintiff's claim regarding copies of his grievances must be dismissed. In sum, Plaintiff's claims against Defendant Houser for the violation of his Fifth and Fourteenth Amendment rights based on denial of access to the law library and failure to provide Plaintiff with copies of his grievances must be dismissed.

> D. Claims Against Defendant Sheriff Carpenter

Finally, the Court notes that Plaintiff has named Sheriff Carpenter as a Defendant, and Plaintiff appears to be making a claim against Defendant Carpenter based on supervisor liability and based on Defendant Carpenter's failure to respond to Plaintiff's appeals of the denials of grievances. To demonstrate supervisor liability under Section 1983, Plaintiff would have to show that Defendant Carpenter had actual or constructive knowledge that his subordinates such as Lieutenant Houser and Sergeant Reid were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to Plaintiff, that their response was inadequate, and that there was a causal link between their inaction and Plaintiff's injury. See Shaw v. Stroud, 13 F.3d

791, 799-800 (4th Cir. 1994). Plaintiff has presented no such evidence; thus, Defendant Carpenter cannot be held liable in this case under a theory of supervisor liability.

The only alleged misconduct directly attributable to Defendant Carpenter was Carpenter's failure to respond to Plaintiff's appeals of denials of grievances, which Plaintiff claims violated his Fifth and Fourteenth Amendment rights. In a Declaration, Defendant Houser has explained that during Plaintiff's time in custody, the jail went from a paper-driven grievance system to an electronic system, in which inmates enter their grievances through any one of several kiosks placed throughout the jail. (Doc. No. 53-1 at ¶ 8). Although Houser saw Plaintiff's grievances once Plaintiff submitted them, Houser did not realize at the time that there was a separate portal for the submission of grievance appeals. Houser states that Plaintiff's appeals were therefore not discovered until after he filed this lawsuit. (Id.).

Defendant Carpenter is entitled to summary judgment as to Plaintiff's claim based on Carpenter's failure to respond to Plaintiff's appeals of denials of Plaintiff's grievances. "[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Even assuming that Defendant Carpenter violated the jail's grievance procedures by not responding to Plaintiff's appeals, the Court finds that this does not amount to a constitutional violation. Riccio v. County of Fairfax, 907 F.2d 1459, 1469 (4th Cir. 1990) (explaining if state law grants more procedural rights than the Constitution requires, a state's failure to abide by that law is not a violation of the Constitution). Plaintiff has not shown that Defendant Carpenter's failure to respond to Plaintiff's appeals of his grievances in any way impeded Plaintiff's right to bring this action. As Plaintiff has not successfully alleged that Defendant Carpenter violated his

13

constitutionally protected rights, Plaintiff's claims against Defendant Carpenter will be dismissed.[8]

## IV. CONCLUSION

For the reasons stated herein, the Court dismisses Plaintiff's claims against all Defendants.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant Humphries' first Motion to Dismiss, (Doc. No. 40), and Defendant IMS' first Motion to Dismiss, (Doc. No. 43), are **DISMISSED,** as they have been mooted by Plaintiff's filing of the Amended Complaint. The Clerk is instructed to terminate these motions.

2. Defendant Humphries' Motion to Dismiss, (Doc. No. 65), Defendant IMS' Motion to Dismiss, (Doc. No. 54), and the Motion for Summary Judgment by Defendants Carpenter, Houser, Reid, and the Lincoln County Sheriff's Department, (Doc. No. 52), are **GRANTED** and this action is dismissed with prejudice.

Signed: August 19, 2013

Robert J. Conrad, Jr.
United States District Judge

---

[8] The Court further notes that, as to Defendant Lincoln County Sheriff's Office, a North Carolina sheriff's office is not a legal entity capable of being sued. See Hill v. Robeson Cnty., N.C., 733 F. Supp. 2d 676, 690 (E.D.N.C. 2010).